UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ASHLEIGH SMITH,

      Plaintiff,

v.

HOLTON TOWNSHIP; and
JILL COLWELL-COBURN,
former Holton Township Clerk,
in her personal and official
capacities,

      Defendants.

File No. 1:23-CV-

Hon.

_____

## COMPLAINT AND JURY DEMAND

_____

### Complaint

Plaintiff Ashleigh Smith, by and through her attorneys, Goodman Acker, PC, and Pinsky Smith, PC, states as follows:

### Jurisdiction, Venue, and Parties

1.     This is an action requesting that the Court remedy violations of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 20901 *et seq.*; and the Fourteenth Amendment of the United States Constitution.

2.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331.

3.     Plaintiff Ashleigh Smith is a resident of Twin Lake, Michigan, and of the Western District of Michigan.

4.     Defendant Holton Township ("the Township") is a local unit of government organized pursuant to the laws of the state of Michigan and a state actor. The Township is located in the Western District of Michigan.

5.     Defendant Jill Colwell-Coburn was the elected Township Clerk until she resigned from that position on November 15, 2022. Upon information and belief, she resides within the Western District of Michigan.

6.     Venue is proper within this judicial district under 28 U.S.C. § 1391(b).

Factual Allegations

7.     About 22 days prior to the November 8, 2022, General Election, Plaintiff registered online so she would be able to exercise her right to vote in the General Election. She used the Michigan Secretary of State's website to do so, and at the same time, she updated her current address for her driver's license.

8.     A few days later, the Secretary of State mailed Plaintiff a sticker with her correct address to place on her driver's license and a voter registration receipt. Plaintiff placed the sticker on her driver's license, and saved the receipt.

9.     On Election Day, November 8, 2022, Plaintiff arrived at her polling location, at Holton Township Hall, at around 10:00 a.m. The poll worker scanned Plaintiff's identification, and reported to Plaintiff that her name and address did not appear in the electronic pollbook with the list of qualified voters eligible to cast

2

ballots at that polling place. Another poll worker brought Defendant Colwell-Coburn to the table, who escorted Plaintiff to her office in the Township Hall.

10.    Plaintiff presented her voter registration receipt to Defendant Colwell-Coburn.

11.    Defendant Colwell-Coburn told Plaintiff that she did not understand why the electronic pollbook would not accept Plaintiff's address, correctly noting that, under Michigan law, Defendant Colwell-Coburn should have been able to register Plaintiff to vote on the spot even if she had not been registered. However, Defendant Colwell-Coburn could not successfully check Plaintiff off in the pollbook to give her a ballot, nor could she pull up Plaintiff's address at all, even though her address was correct and within the district covered by the polling place.

12.    Plaintiff waited in Defendants' office for some time, while Defendant Colwell-Coburn obtained a second election worker to try to assist. Defendant Colwell-Coburn said she tried calling the Secretary of State's helpline, but she had to leave a voicemail and could not immediately speak to someone.

13.    Then Defendant Colwell-Coburn called the Cedar Creek Township Clerk and spoke with her. Plaintiff could hear them talking on the phone from where she was seated. The two clerks went over what Defendant Colwell-Coburn had tried to attempt to access the system to give Plaintiff her ballot. The Cedar Creek Township Clerk told Defendant Colwell-Coburn that she was not the only clerk who was having a problem using the electronic pollbook, and told Defendant Colwell-Coburn to keep trying.

14.     Then Plaintiff overheard the Cedar Creek Township Clerk tell Defendant Colwell-Coburn that she could not give Plaintiff a ballot "until it works," meaning the electronic pollbook. Under Michigan law, this is not the correct procedure to follow when there is a failure of the electronic systems.

15.     At this point, Plaintiff had been waiting about 25 to 30 minutes trying to vote. At one point, Plaintiff went to her car to sit and wait for a while, and returned inside. Defendant Colwell-Coburn asked Plaintiff to come back to the polling place later in the day, and Plaintiff agreed to do so.

16.     Plaintiff, who is self-employed as a commercial and residential cleaner, called her scheduled customer and advised that she needed to reschedule her appointment with the customer so that Plaintiff would be able to vote.

17.     When Plaintiff returned a short time later, now for the third time, one of the elections workers told Plaintiff that she was not the only voter having the problem with her address being unrecognized by the electronic pollbook. Defendant Colwell-Coburn took copies of Plaintiff's driver's license and the identification of another female voter back to her office to make calls with their information to other potential sources of assistance, attempting to successfully locate Plaintiff and the other voter in the electronic pollbook. Defendant Colwell-Coburn told Plaintiff that she would speak with another clerk for assistance. After waiting for a while, Plaintiff left the polling place again, without having been able to vote.

18.     Around 6:45-6:50 p.m. that evening, about an hour prior to the 8:00 p.m. close of the polls, Plaintiff called Defendants' office. Defendant Colwell-Coburn

4

told Plaintiff that the electronic pollbook still was not working and still would not accept Plaintiff's address. Defendant Colwell-Coburn said that another clerk told Defendant Colwell-Coburn that there was nothing more that could be done, that Plaintiff would not be permitted to vote in the election, and that Plaintiff could file a complaint the following day with the Clerk's Office if she wanted.  Defendant Colwell-Coburn told Plaintiff that she was sorry, but that there was nothing more she could do and that Plaintiff could not vote.

19.     Defendant Colwell-Coburn's conclusion that Plaintiff was unable to vote because the electronic pollbook would not recognize Plaintiff's correct address was tragically incorrect, since it resulted in the denial of Plaintiff's right to vote. Under Michigan law, there are multiple procedures put in place by the Secretary of State's Office to address situations like those alleged herein, and local clerks who run elections are expected to know and be able to implement these policies. At the very least, Michigan law requires that under these circumstances, Plaintiff be allowed to vote a provisional ballot.

20.     On November 15, 2022, one week later, Defendant Colwell-Coburn resigned as Township Clerk.

## COUNT I – VIOLATION OF THE HELP AMERICA VOTE ACT OF 2002 PURSUANT TO 42 U.S.C. § 1983

21.     Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

22.     Defendants, while acting under the color of law, violated Plaintiff's statutory rights by failing to use alternate procedures designed to issue a ballot to

an eligible voter when a failure of technology occurs, or as a last resort, by failing to offer and provide her with a provisional ballot on Election Day.

23.    Defendants' actions violated the statutory rights guaranteed to Plaintiff by HAVA.

24.    Defendant Colwell-Coburn acted pursuant to a policy or custom of the Defendant Township. This policy or custom was the failing to use procedures designed to issue a ballot to an eligible voter when a failure of technology, or to offer and provide a provisional ballot to voters whose names do not appear in the poll book.

25.    As a direct and proximate result of Defendants' failure to offer and provide a regular or provisional ballot, Plaintiff was unable to cast her vote on November 8, 2022.

26.    As a result of Defendants' violation of the HAVA, Defendants are liable to Plaintiff for damages, including lost wages and benefits; damages for the loss of her right to vote; attorney fees and costs; and punitive damages.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages; (2) compensatory damages for emotional and mental distress; (3) punitive damages in an amount as determined by a jury; (4) remedial measures deemed appropriate; plus (5) interest and costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief deemed necessary and proper by the Court.

## COUNT II – VIOLATION OF THE FOURTEENTH AMENDMENT, PURSUANT TO 42 U.S.C. § 1983

27.     Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

28.     Defendants' actions violated the constitutional rights guaranteed to Plaintiff by the Due Process Clause of the Fourteenth Amendment by denying her the fundamental right to vote.

29.     A reasonably competent clerk is trained as to, and knows, or should be trained as to and know, the procedures necessary to check a voter's registration and/or to offer the voter the ability for same-day registration under Michigan law, and then to provide the voter with the correct ballot that the voter can complete and insert into the tabulator.

30.     A reasonably competent clerk is trained as to and know, or should be trained as to and know, the procedures for when the electronic process does not work as expected, so that a clerk is still able to process voters and provide them with ballots in a timely manner, while properly maintaining records and complying with law.

31.     Defendants turned Plaintiff away from her polling place multiple times on November 8, 2022, and refused her a ballot, contrary to the proper procedures under Michigan law, thereby denying her the ability to exercise her right to vote.

32.     Defendants' actions were not narrowly tailored to further a compelling government interest, and thus were not constitutional under the Equal Protection Clause of the Fourteenth Amendment.

7

33.    As a result of Defendants' violation of the Fourteenth Amendment, Defendants are liable to Plaintiff for damages and attorney fees and costs.

34.    Plaintiff also asks the Court to implement remedial measures designed to ensure that Defendant Township's officials follow lawful policies, obtain necessary training, and avoid a violation of rights like this in the future.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages; (2) compensatory damages for emotional and mental distress; (3) punitive damages in an amount as determined by a jury; (4) remedial measures deemed appropriate; plus (5) interest and costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief deemed necessary and proper by the Court.

## COUNT III – VIOLATION OF THE MICHIGAN CONSTITUTION'S EQUAL PROTECTION CLAUSE

35.    Plaintiff incorporates the allegations of all prior paragraphs as if set forth herein.

36.    Defendant's actions violated the rights guaranteed to Plaintiff in Michigan's Constitution under its Equal Protection Clause, art. I, § 2, by denying her the fundamental right to vote.

37.    Defendants turned Plaintiff away from her polling place on November 8, 2022, multiple times without allowing Plaintiff to exercise her right to vote, despite acknowledging that Plaintiff was eligible to vote and to do so in that location.

38.     Defendants' actions were not narrowly tailored to further a compelling government interest, and thus were not constitutional under Michigan's Equal Protection Clause.

39.     As a result of Defendants' violation of Michigan's Equal Protection Clause, Defendants are liable to Plaintiff for damages and attorney fees and costs.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendants including the following relief: (1) an award of lost wages; (2) compensatory damages for emotional and mental distress; (3) punitive damages in an amount as determined by a jury; (4) remedial measures deemed appropriate; plus (5) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

GOODMAN ACKER, PC
Attorneys for Plaintiff


Dated: October 3, 2023          By:___/s/ Mark Brewer_____
                                    Mark Brewer
                                    Rowan E. Conybeare
                                    17000 W 10 Mile Rd Ste 200
                                    Southfield, MI 48075-2902
                                    (248) 483-5000
                                    mbrewer@goodmanacker.com

                                PINSKY SMITH, PC
                                Attorneys for Plaintiff

Dated: October 3, 2023          By:___/s/ Sarah R. Howard_____
                                    Sarah Riley Howard
                                    146 Monroe Center St NW, Suite 418
                                    Grand Rapids, MI  49503
                                    (616) 451-8496
                                    showard@pinskysmith.com


9

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.


PINSKY SMITH, PC
Attorneys for Plaintiff


Dated: October 3, 2023          By:     /s/ Sarah R. Howard
Sarah Riley Howard
146 Monroe Center St NW, Suite 418
Grand Rapids, MI 49503
(616) 451-8496
showard@pinskysmith.com

10